May it please the Court, I'm Matthew Kolkin, representing the petitioners. Similar to the last case that was heard, this also involves the issue as to whether or not an individual maintains a well-founded fear of future persecution, and in this situation there was also no incidence of past persecution. However, there were some specific findings by the finder of fact with regards to credibility and there was a determination that the petitioner maintained a genuine fear, a subjective fear of return, but then found that there was not an objective possibility that she would be subjected to persecution if she were to return to China, and this basis was on her religious fact that the Chinese government is specifically targeting certain... No, she's got no past persecution, she's got fear of future persecution, so we don't have the presumption. That's correct, and so the burden is squarely on the petitioner's shoulders here, but we would respectfully submit that that burden is very low, and unfortunately both the Board of Immigration Appeals and the Immigration Court relied upon and seized upon a numerical finding of the record, which specifically stated that there was, and seized upon it to find that there was only a very small percentage of individuals that are in China that are practicing Christians that are being targeted. I'm sorry, go ahead and finish. I believe I did. I'm sorry for interrupting you. What's the proof of individualized risk? The proof of individualized risk with regards to these petitioners is that they went back, they actually did their due diligence. They returned back to China, they searched out a church where they would be able to worship, they went to a government-sanctioned church, which they found to be deficient with regards to their religious beliefs because the religious doctrine was bastardized to include elements that were not in conformity with the scriptures. So they sought out underground churches where they would be able to practice their religion, and it was not easy for them to do so, and when they found one that was satisfactory to their needs, they spoke to the parishioners of this underground church, and the individuals of that church attested to the fact that they were being targeted by the Chinese government, that they were being harassed and persecuted, and that their ability to freely practice their religion in these underground churches was limited at best. Go ahead. No, no. Well, it occurs to me that at this level of proof, where it does not even appear that your clients are saying, I'm going to go back to this house church, but rather they want to go back to a house church, that means that you're going to need to show that there is general persecution of those who are in house churches, which might mean then that pretty much anybody in China going to a house church is eligible for asylum. Now, am I misstating where the argument leads? I don't believe so. However, there's another element to that, in that this particular petitioner intends to be a leader of a church, not just a parishioner. And so that narrows the group of individuals, because it puts her at heightened scrutiny. The individuals that are providing these services are obviously being targeted harshly. This circuit has ruled very recently that, within the last month, that there were reasonable possibilities of fear of return based on a past persecution claim of a Chinese Christian. But the record before the court, both at the trial level and which was reviewed by the Board of Immigration Appeals, had ample evidence of the fact that there was a large increase, 42% increase, of evidence attesting to the government persecuting Christians. And that was back in 2013. And although this is not before the court today, the country conditions have gotten exponentially worse since this application was filed. And we have sought to correct this through other means, by filing motions to reopen to consider additional evidence of the change, material change in country conditions. Were your clients harmed, harassed, or threatened in any way in what you describe as their due diligence trip back to mainland China? They were not, however. They were limited in their ability to practice their religion as a result of the impositions of the Chinese government. They tried to find a church. The church was not preaching the scripture as it is written. They went to an underground church. They were not able to freely practice there because of the limitations that were placed on the underground church. So their ability to practice, to freely practice their religion, was minimized when they returned to China. And so, with the law with regards to asylum- I guess there's two ways of looking at that. But they, you've described how they went back. Yes. They looked at a state-sanctioned church. Not to their liking, not to their understanding of how they read the scriptures. They went to an underground church, which they thought met their personal requirements. My question is, did anything happen to them? We are not asserting that there was any grounds for past persecution here. So there was nothing that would rise to the level more than potentially mere harassment, which does not- doesn't rise to the level of what is necessary for it to constitute past persecution. And that's why we have to show that there is a well-founded fear of future return. And we would submit that, with regards to the 10 percent standard that was set forth in the INSV Cardoza-Fonseca case, that that is, in essence, probably one of the lowest burdens to clear in all of law. As high as the burden is in a criminal context for beyond a reasonable doubt, this is likewise low. And it's not a mathematical equation that the court should be engaging in as to whether or not how many individuals that practice a certain religion are being subject to persecution in order for an individual to establish that they have an objective fear of going back- of persecution on account of their religious beliefs. This must be done on a case-by-case basis. So by looking at and seizing upon a numerical figure of the record and comparing it to the overall population of practicing Christians, that's not what the Supreme Court had set forth in their decision. What they have set forth is that the burden, once there is a genuinely subjective fear of return based on an enumerated ground, that the fear of return must merely be reasonable. And when there are ample evidence of record, which includes the immigration judge who specifically stated that Christians are being targeted in unacceptable numbers. So there is evidence in there, in the record, which sets forth that people that are similarly situated to the respondent- excuse me, the petitioner, I have to call back on respondents in the immigration context, I apologize- to the petitioner are currently being persecuted on account of their religious beliefs in large numbers, and those numbers, according to the record back in 2013, were increasing by a substantial percentage. Good. Get away from the government and then you'll have a chance to respond. Thank you, Your Honor. Ms. Clay. Morning again. You know, sometimes the department will send up three lawyers for three individual immigration cases. Thank you for consolidating these. We're anxious to hear your argument. Saving some money. Okay. May it please the Court, Sharon Clay for the government. Petitioner has not presented any evidence to compel the conclusion that her fear of future persecution of China is objectively reasonable. She has not been individually targeted for harm or personally placed in danger, so she cannot establish the reasonable possibility of being singled out for persecution under the standard or disfavored group analyses. Petitioner also failed to show a pattern or practice of persecution against similarly situated church members. The record clearly shows that there were 5,000 instances of persecution in 2012. Of those 5,000, 442 were actually church leaders, when there's actually tens of millions of actually practicing underground church members. Upon looking at this evidence, the agency determined that the pattern or practice, that the, that there was no pattern or practice of persecution in China with regard to underground church members. With regard to the agency's use of the mathematical computation, I would submit that it was probably them trying to provide additional analysis and trying to determine her likelihood of future persecution based on additional evidence in the record. Because the petitioner had not established that she was in a disfavored group, it may be quite reasonable for them to have used this unrebutted evidence that's in the record to determine whether or not, given the circumstances of a non-pattern or persecution case, where it's not systemic, it's not widespread, that maybe this calculation might provide additional evidence as to whether or not she's likely to be persecuted. We would also submit that given that all evidence relevant to the likelihood of persecution should be considered, it probably would have been an abuse of discretion for the board not to consider that information, even if it wasn't exact, it wasn't a complete total, but that was the evidence that it was provided and that was the evidence that it actually evaluated. So, based on that information, because the petitioner has failed to meet that, satisfy the lower burden of proof for asylum, we would argue that she necessarily fails to meet the burden of proof for withholding or removal. And in closing, I would like to just say that substantial evidence supports the agency's determination that she failed to establish an objectively reasonable fear of future persecution based on her participation in the underground church. And no reasonable fact finder would probably find to the contrary. You had asked earlier about what an individualized risk is, and I would say that an individualized risk is the risk of being exposed to maybe a past threat or a personal connection to the crime. If you look at the case of Lolong, the petitioner actually had identified herself with a group and she also submitted evidence that family members back home were being persecuted or family and a friend were harmed in the same way she alleged that she would be harmed. And in Lolong they decided or concluded that that was insufficient to establish her individualized fear and that she was required to have her own personal connection with the danger, not that she has to necessarily be harmed. And with that, I'm finished. Thank you. Thank you. Mr. Cooke. With regards to the evidence of record, we would like to point out the fact that there was additional evidence which was included in the administrative record at 179 to 180, which indicates there was the government's, the Chinese government's own secret directive that it had a policy to eradicate Protestants within the house church movement unless they affiliated with the TSPM, which is the Three-Self Protestant Movement, and that China's active, the government is actively taking steps to, was actively taking steps to eliminate the practice of Christianity within the country. The administrative record also includes, in addition to the 42%, which I had mentioned before, that at 176, pursuant to an October 14, 2013 report, that millions of Christians are prosecuted, or excuse me, are persecuted in China. At page 115, or 150 of the administrative record, there was a Congressional Executive Commission annual report, which shows that the Chinese Constitution does not protect freedom of religion. There was other reports. There was a Human Rights report. There was a United Commission of International Freedom report, all showing that Chinese Christians were being targeted. And that goes to the fact that whether or not all of this evidence, which is part of the record, which was not considered in any meaningful way, the only thing that the immigration judge and the Board of Immigration Appeals really focused in on was that 5,000 number. And the, this circuit has ruled where, where if the board fails to consider the totality of the evidence, Colby Holder, 659, Fed Third, 762, 771 through 72, where they, where the board considered all of the evidence, and just focuses on the unfavorable thing, that that, that that would require a reversal. Okay. Thank you. Thank, thank both sides for their arguments. Lee and Zhu versus Barr now submitted for decision.
judges: Hawkins, W. Fletcher, Bury